May Term, 1855.

EVANS
v.
HUDSON.

---

### EVANS *v.* HUDSON.

Where there are two provisions in a will which are totally inconsistent, that which is posterior in local position must be taken to denote the intention of the testator.

APPEAL from the *Harrison* Circuit Court.

DAVISON, J.—Bill in chancery. *Hudson*, the appellee, was the complainant, and *Evans* the defendant.

On the 28th of *November*, 1840, one *Levi Giddings* made his will, and within six days thereafter died, leaving *Martha Giddings* his widow, two children, *Julia Evans* and *Ardelia Hudson*, and three grand-children, named *James A. Hudson*, *Beersheba Hudson* and *Levi Saffer*. The appellant, who was the defendant below, is the husband of the said *Julia*. *Ardelia* was the mother of *James A.*, the appellee, and *Beersheba* his sister. *Giddings*, at his death, left a large estate, in money and property, which has been settled by his administrators. When *Giddings* died, the appellee and his sister were minors, and the appellant became their guardian.

The bill charges that the appellee and his sister were entitled as legatees under the testator's will; that as such guardian the appellant has received large amounts of money, notes and judgments from said estate, the whole

*Friday, June 1.*

of which of right belong to them, &c.  The bill prays that the guardian may account and pay over to the appellee his portion of the money, &c., and for general relief.

By his answer the appellant admits that, as guardian, a certain amount of money came to his hands; denies that he is liable to account to the appellee and his sister for more than one-half of it; and alleges that the money, &c., in controversy was bequeathed to the said *Ardelia Hudson* and *Julia Evans*, the only children of the testator alive at his death; that *Ardelia* had died intestate, leaving the appellee and his sister her only heirs; and that it is alone as such heirs, and not as legatees under the will, that they can claim an interest in the subject of the present suit; that the will gave the money, notes, &c., mentioned in said bill equally to *Julia Evans* and *Ardelia Hudson*, and that *Julia* being the appellant's wife, he is in her right entitled to one-half of said money, &c.

The cause was submitted, &c.  Upon final hearing the Court decided that all the property in contest had been by said will bequeathed to the said *Ardelia Hudson*, and accordingly decreed in favor of the appellee 583 dollars.

The will is as follows:

" As to such estate as it hath pleased God to entrust me with, I dispose of in the following manner:

"1. I direct that my debts be paid," &c.; "that all my stock, household and kitchen furniture shall remain in the hands of my wife; that after collecting all moneys and paying all just debts, the balance of my moneys shall be put out at interest, and the interest applied, so far as may be necessary, to the tuition of my two grand-children, *James A.* and *Beersheba Hudson*.  *Afterwards divided between my children.*

"2. I bequeath to my grandson, *Levi Saffer*, 150 dollars in cash, to be put out at interest, and the principal and interest to be paid to him when he arrives at the age of twenty-one.

"3. I will that my wife shall have and hold a certain tract of land in the *Jeffersonville* district," (describing the land); "also certain lots in the town of *Elizabeth*," (des-

cribing them,) "for and during her life. Said property, at her death, to be equally divided amongst *my children.*

"4. To my daughter *Ardelia Hudson* I devise a certain tract of land in said district," (describing it); "also a block of lots," (describing them); "to have and to hold to her during life, and after her decease to be equally divided between my two grand-children, *James A.* and *Beersheba Hudson.*

"5. It is also my will that it shall be the duty of my administrator or executor to deliver up to my daughter *Julia Evans,* or her husband *John A. Evans,* all notes, receipts, bonds or dues whatever which I hold against the said *Julia* and *John A., which shall be in full payment of the said Julia and John A. Evans' proportion of my estate,* together with all accounts, dues and demands which the said *John A.* or *Julia,* his wife, may hold against me," &c.

The appellant, in right of his wife, claims under the first clause of the will. As we have seen, it provides that "after collecting," &c., "and paying," &c., "the balance of my moneys shall be put out at interest, and such interest, so far as necessary, to be applied to the tuition of my two grandchildren; *afterwards* to be divided between my children." Whether any amount was ever appropriated to the purposes of tuition, as directed by the will, is not shown; but it is proved that *Julia Evans* and *Ardelia Hudson* were the only *children* of the testator in being when the will was made, or at his death. The first clause, therefore, is decided in its support of the defence set up in the case, because there is nothing in the will *tending* to show that the testator meant to use the word "children" in any other than its ordinary sense. Those who bore to him that relation, and no others, were evidently intended.

But the clause thus relied on is, in our opinion, directly in conflict with a subsequent provision, which, in effect, excludes the right of *Julia Evans* from any portion of the property involved in this suit. The fifth clause, it will be seen, is very explicit. It directs the executor to deliver up to the appellant and his wife all notes, &c., which the testator held against them, "*in full payment of their propor-*

*tion of his estate,"* together with all accounts, &c., which they might hold against him. These provisions in the will are totally inconsistent with each other. They can not stand together. When this occurs, the rule of construction is well settled. "The clause which is posterior in local position must prevail, the subsequent words being considered to denote a subsequent intention." 1 Jarm. on Wills, 394.

It is said in argument that the intention of the testator, collected not from any particular or detached clause, but from the whole will, must govern its construction. Where such intent can be ascertained, that principle obviously applies; but would its application to the present case favor the defence? The claims to be surrendered plainly constituted a part of the estate. We are not informed by the record of the amount of these claims, but as they were in express terms directed to be delivered up "*in full payment,*" &c., it is not an unfair presumption that the testator considered them, in amount, at least, one-half of all the personalty bequeathed to his children, and therefore a fair provision for the appellant and his wife. At all events, no intent, either express or implied, sufficient to control the expressed import of the last clause, can be collected from the whole will; and that clause, being "posterior in local position" to the one under which the appellant claims, must be allowed to denote the real intention of the testator. This construction, it is said, will materially affect provisions in the will other than those under discussion. We think differently. But whether it will or not is a question not "arising in the record," and, for that reason, not properly before us.

It is insisted that the decree is too large; that it is for an amount not authorized by the proof. We have carefully examined the evidence, and, in our opinion, the weight of it sustains the finding of the Court.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*H. P. Thornton* and *W. A. Porter*, for the appellant.

*R. Crawford*, for the appellee.