No. 7925.

CRITCHELL ET AL. *v.* BROWN ET AL., EX'RS.

CONSTRUCTION OF WILL.—In construing a will, all its provisions must be considered together so far as practicable ; and, where two of its provisions are inconsistent with each other, the one last made must pre-

Critchell *et al.* *v.* Brown *et al.*, Executors.

vail, the subsequent words being considered to denote a subsequent intention. For the construction of a particular will, see the body of the opinion.

DISMISSAL OF APPEAL.—*Practice.*—A motion to dismiss an appeal upon the ground that no bond has been filed by appellant, made after the cause has been considered and decided on its merits, comes too late, and will not be entertained.

From the Floyd Circuit Court.

*F. H. Collier* and *J. H. Stotsenburg*, for appellants.
*A. Dowling*, for appellees.

NIBLACK, C. J.—With some condensation in the mere phraseology, the complaint in this case may be stated as follows :

Mary Ayers Critchell and Robert S. Critchell, her husband, and John W. Moody complain of Jesse J. Brown and Silas C. Day, executors of the last will of Mary A. Lapsley, deceased, and say, that the said Mary A. Critchell and John W. Moody are the children and only heirs at law of Catharine Silliman Moody, formerly Catharine Silliman Hillyer, who died intestate on the 25th day of April, 1850 ; that, on the 29th day of December, 1840, one Elias Ayers, a resident of Floyd county, in this State, made and published his holographic last will and testament, whereby, amongst other bequests, he bequeathed to the said Catharine Silliman Hillyer, who was his niece, one thousand dollars, to be paid, at least, at the death of her aunt, the said Mary A. Lapsley, who was then the wife of the said Elias Ayers, and known by the name of Mary A. Ayers, and as much sooner as, in the judgment of his executrix, might be deemed best after the said Catharine became of age, leaving it discretionary with his said executrix to make such further provision for her, the said Catharine, to the amount of five thousand dollars, or even more, as she, the executrix, might think best, and as the good conduct of the said Catharine might merit ; that, further on, by the third item of his said will, the said

Elias Ayers devised and bequeathed to his said wife, then the said Mary A. Ayers, who was the aunt of the said Catharine, all the rest and residue of his estate, both real and personal, after the payment of his debts, and after the payment of certain other specific legacies named in said will; that the said Elias Ayers further provided in said third item of his will, that, in order to avoid all dispute and controversy amongst friends or relatives, he wished it distinctly understood that the provisions of his said will were made after long and serious reflection, and were the result of his best judgment, and that he wished all of its provisions carried into full and complete effect, to the exclusion of friends and relatives not therein named.

And, by the same clause, the said Elias Ayers also declared that it was also his wish that the said Mary A. Ayers, his wife, who was made his sole executrix by said will, at her death, should give the greater part of her property to benevolent objects, and that, should she die without a will, he, the said Elias Ayers, devised and bequeathed, with the exception hereinafter named, the whole of his property, both real and personal, to the trustees of the General Assembly of the Presbyterian Church in the United States, which exception was that he wished five thousand dollars to be given to his beloved niece, Catharine Silliman Hillyer, above named, and a like sum to her brother, William Silliman Hillyer, the residue only to go to the trustees of the Presbyterian church as above directed; that afterward, on the 10th day of January, 1842, the said Elias Ayers died, without revoking or in any way modifying or changing his said will, which will was duly proven and admitted to probate, in said county of Floyd, and the said Mary A. Ayers was thereupon duly qualified as the sole executrix of the same, and took into her exclusive possession all the estate, both personal and real, of the said testator, to an amount much more than sufficient to pay his funeral expenses, his just debts, the

legacies and bequests specified in the first and second items of his said will, and all other testamentary expenses whatever; that the said testator left no children or grandchildren; that the said Catharine, in the year 1836, being then nine years of age, was taken by the testator to his home in New Albany, in this State, where she was kindly reared and educated by him; that the said Catharine reciprocated the kindness of the testator to her with her services and by general good conduct so long as she remained with him, and with his said widow, Mary A. Ayers, and until the day of her death; that when said will was made, and up to the time of his death, the investments of the said Elias Ayers were chiefly in real estate, and all that period of time was, as he well knew, a period of financial trouble and uncertainty in which real estate was of an uncertain value; and, although he was then worth in property fifty thousand ($50,000.00) dollars, such a valuation did not become stable and permanent until after his death; that, prior to the 26th day of October, 1848, when the said Catharine became twenty-one years of age, all the just debts and specific legacies, named in the first paragraph of said will, had been fully paid, leaving a residuary personal estate in the sole possession and use of the said Mary A. Ayers of the value of at least fifty thousand dollars, and which has since continued to be of that value, and that, at all times from the making of said will until the death of the said Catharine, her good conduct merited the further provision made for her in the second item of the will to the extent of at least five thousand dollars; that in April, 1849, the said Mary A. Ayers intermarried with one Philip Lindley, and that after his death she intermarried with one William Richardson, and that after his death she intermarried with one Robert A. Lapsley, whom she also survived; that finally on the 1st day of June, 1878, the said Mary A. Lapsley died testate, and, although she provided by her will for the payment of the amount of

five thousand dollars to the widow of William Silliman Hillyer, herein above named, she did not make any provision for the payment to the plaintiffs of a similar sum, or of any part thereof ; that, at the time of the death of the said Mary A. Lapsley, she was seized and possessed of all the remaining estate, both real and personal, of the said Elias Ayers, amounting to much more than sufficient to pay all the debts and charges against his estate, and the specific legacies enumerated in and provided for by his will, together with the additional sum to which the plaintiffs claim to be entitled as the children and heirs-at-law of the said Catharine, under said will ; that the plaintiffs are unable to state the exact value of the residue of property left by the said Elias Ayers remaining in the hands of the said Mary A. Lapsley at the time of her death, as she never filed any inventory of the personal estate of her said testator, nor at any time made any report concerning, or settlement of, his estate ; that said estate was, however, never of less value than fifty thousand dollars since the said Catharine arrived at full age ; that, on the 10th day of September, 1844, the said Catharine intermarried with one James C. Moody, and at her death left the plaintiffs, Mary A. Critchell and John W. Moody, and one Catharine H. Moody, as her only children surviving her ; that the said Catharine H. Moody afterward, in the year 1850, while yet an infant, died intestate and without issue, and not indebted to any one ; that on the 14th day of September, 1875, and before the commencement of this suit, the said James C. Moody, by a proper instrument in writing, assigned to the said plaintiffs, Mary A. Critchell and John W. Moody, all his right, title and interest in and to the money claimed in this action ; that, by the terms of the said will of the said Elias Ayers, the said Mary A. Lapsley was created a trustee to pay to the said Catharine A. Moody the sum of five thousand dollars, which the said Elias Ayers had directed to be paid as above set forth, yet

the said Mary A. Lapsley did not, in her lifetime, pay the said sum of money, or any part thereof, to the said Catharine A. Moody, or to the plaintiffs since her death; that although the said Jesse J. Brown and Silas C. Day, executors as aforesaid, have in their hands assets amounting in value to at least fifty thousand dollars, out of which the plaintiffs' claim might be paid, and although the payment of such claim had been demanded of them, yet they have refused, and still refuse, to pay to the plaintiffs said sum of five thousand dollars, or any part thereof. Wherefore the plaintiffs prayed that they might be decreed to be entitled to receive from the estate of the said Mary A. Lapsley, deceased, the sum of five thousand dollars and interest thereon, in right of the said Catharine A. Moody, deceased, and for all other proper relief.

A demurrer was sustained to the complaint, and final judgment was rendered for the defendants upon their demurrer. The only question, therefore, before us is that of the sufficiency of the complaint; and, in the discussion of that question, we are only asked to decide whether, under the will of the said Elias Ayers, Catharine A. Hillyer, afterward the wife of the said James C. Moody, or those representing her, ever, at any time, became absolutely entitled to receive the additional sum of five thousand dollars out of his estate in the hands of the said Mary A. Lapsley, which has come into the possession of the defendants, under her will.

So much of the will of Elias Ayers as it is necessary for us to set out, was as follows :

"1st. I give and bequeath to my aged and feeble sister, Sally Ayers, now living in Flanders, Morris county, and State of New Jersey, a legacy of one hundred dollars a year, during her natural life, to be paid to her annually in money, and should that sum, with her other means, be insufficient to render her comfortable, I leave it in charge with my executrix, or her or my executors, to grant her such further aid

Critchell *et al. v.* Brown *et al.*, Executors.

and sums as shall be necessary for that purpose, and request that [they] will pay special attention to this matter.

"2d.   I give and bequeath to my well-beloved niece and nephew, Catharine Silliman Hillyer and William Silliman Hillyer, one thousand dollars each, to be paid them, at least, at the death of their aunt and my wife, Mary Ann Ayers, and as much sooner as, in the judgment of my executrix or executors, as the comfort of my widow and the best interests of the said Catharine and William shall demand, after they shall be of age, leaving it discretionary with their said aunt, Mary Ann Ayers, to make such further provision for them, to the amount of five thousand dollars each, or even more, as she may think best, and their good conduct merits.

"3d.   I give and bequeath to my said beloved wife, Mary Ann Ayers, all the rest and residue of my estate, both real and personal, after the payment of my just and lawful debts and the aforesaid legacies and bequests, to have and to hold the same to her own use and benefit, to be by her disposed of by will, or otherwise, as she shall see fit.   And I hereby appoint her sole executrix of this my last will and testament, leaving it discretionary with her to call in such aid as she may need, and desiring her to proceed in settling the estate and transacting the business thereof, in all respects as I myself would do, taking letters testamentary for the purpose only of lawful authority in such settlement, and not being required to give any security thereon, nor to make any inventory or sale of said real estate.

"In order to avoid all dispute and controversy among friends or relatives, which too frequently take place, I wish it distinctly understood that the provisions of this, my will, are made after long and serious reflection, and are the result of my best judgment, and I wish all its provisions carried into full and complete effect, to the exclusion of friends and relatives not herein named.

"And it is also my wish that my widow shall, at her

death, unless some great change shall take place in my present, or her future, circumstances, give the greater part of her property to benevolent objects, *specially* remembering the theological seminary recently removed to this place, the General Assemblies, Boards of Education, Foreign and Domestic Missions, and the American Bible and Tract societies; and should she, my present wife and future widow, Mary Ann Ayers, die without a will, I hereby give and devise the whole of my property, both real and personal, with the exception hereinafter named, to the trustees of the General Assembly of the Presbyterian Church in the United States, generally denominated "Old School," to be by them disposed of as the General Assembly shall direct, for the benefit of the several objects and institutions above named, having specially a fatherly eye to, and care of, the theological seminary above named.

"The exception above named is this: I wish five thousand dollars to be given to my beloved niece, Catharine Silliman Hillyer, and the like sum of five thousand dollars to her brother and my nephew, William Silliman Hillyer, and all the remainder of the property, be it more or less, to the trustees of the General Assembly, to be appropriated by the General Assembly as above directed."

A careful reading of the testamentary provisions set forth as above makes it evident that they were not formulated by a person accustomed to the preparation of legal instruments, but the same rules must be applied in the construction of these provisions as are generally applicable to the construction of last wills and testaments. One of these rules is, that in construing a will all of its provisions must be considered together so far as practicable. Another is, that where two of its provisions are inconsistent with each other, the one last made must prevail, "the subsequent words being considered to denote a subsequent intention." *Kelly* v. *Stinson,* 8

Blackf. 387; *Evans* v. *Hudson*, 6 Ind. 293; *Holdefer* v. *Teifel*, 51 Ind. 343.

As regards an additional provision of five thousand dollars each, in favor of his niece, Catharine S. Hillyer, and his nephew, William S. Hillyer, which the testator, Elias Ayers, seems to have had in his mind when he executed his will, we construe the second paragraph of that instrument to mean that his widow and executrix was authorized to make such a provision for them at any time, at her discretion, during her lifetime, she, during that period, having full and complete control of all the estate of the said Elias Ayers, not otherwise specifically disposed of.

The last clause of the third paragraph we construe as meaning that the said Catharine and William were, in any event, to have the additional sums of five thousand dollars each out of the estate of the testator at the death of his widow and executrix, the property left in her hands being charged with the ultimate payment of those sums. The "wish" expressed in this last clause of the third paragraph, that the additional sums named should be given to his said niece and nephew, was, in our estimation, when taken in the connection in which it was used, equivalent to a direction that those sums should be paid in accordance with the testator's "wish" thus expressed. 1 Redfield on Wills, 174; *Steele* v. *Levisay*, 11 Grat. 454; *Hunter* v. *Stembridge*, 12 Ga. 192; *Lucas* v. *Lockhart*, 10 Sm. & M. 466; *Reed's Adm'r* v. *Reed*, 30 Ind. 313.

Construing the will of Elias Ayers as we have done, the conclusion is inevitable that the court below erred in sustaining a demurrer to the complaint.

There is a remaining question which counsel have not discussed, and which we have not considered, and that is, Does the complaint contain facts sufficient to entitle the plaintiffs to recover on a chose in action due their ancestor? *Church* v. *The Grand Rapids, etc., R. R. Co.*, 70 Ind. 161.

Critchell *et al. v.* Brown *et al.*, Executors.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

## ON PETITION FOR A REHEARING.

NIBLACK, C. J.—In answer to a very elaborate and exhaustive petition for a rehearing, presented in this case, we willingly admit that, if we had given in all respects a merely literal construction to the will of Elias Ayers, we might, and probably would, have reached a conclusion different from the one announced in the original opinion; but, taking all the clauses together, we received the impression in the first instance, that they meant, and still construe them as meaning, that it was the wish of the testator that the ancestor of the appellants should, in any event, have the sum of five thousand dollars out of his estate, at the death of his widow..

We do not consider the question as to whether the complaint made a case entitling the appellants to recover what was due their ancestor, as that question was not presented by the appellees in their original brief.

The appellees have, since the original opinion was filed, entered a motion to dismiss their appeal, upon the ground that no bond was filed by the appellants, as required by section 189 of the act concerning decedents' estates, 2 R. S. 1876, p. 557; but their motion comes too late, and for that reason can not be entertained.

The petition for a rehearing and the motion to dismiss this appeal are both overruled.

WOODS, J., dissents as to the overruling of the petition for a rehearing.